IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| DONALD B. MARKS, #A0199365, | ) | CIV. NO. 14-00571 HG/BMK |
| | ) | |
| Plaintiff, | ) | ORDER DISMISSING COMPLAINT WITH |
| | ) | LEAVE TO AMEND PURSUANT TO 28 |
| vs. | ) | U.S.C. §§ 1915(e)(2) & 1915A |
| | ) | |
| HAWAII DEP'T OF PUBLIC | ) | |
| SAFETY, JOHN IOANE, SHARI | ) | |
| KIMOTO, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND PURSUANT TO 28 U.S.C. §§ 1915(e)(2) & 1915A

Before the court is *pro se* Plaintiff Donald B. Marks' prisoner civil rights complaint. Marks is currently incarcerated at the Halawa Correctional Facility ("HCF"), although he was housed at the Saguaro Correctional Center ("SCC"), in Eloy, Arizona, when he filed this action in the Circuit Court of the First Circuit, State of Hawaii ("state circuit court"). Marks names three defendants: the Hawaii Department of Public Safety ("DPS"), its Mainland & FDC Branch Administrator Shari Kimoto ("Kimoto"), and its Mainland & FDC Branch Contract Monitor John Ioane ("Ioane") (collectively, "Defendants"). Ioane and Kimoto are named in their official and individual capacities.

Plaintiff Marks claims Defendants violated his due process and equal protection rights as guaranteed by the Fourteenth Amendment to the U.S. Constitution, and Article I, Sections Two, Three, and Five of the Hawaii Constitution. *See*

Compl., Doc. No. 1-1.  Marks further alleges that Defendants violated Hawaii Revised Statutes ("Haw. Rev. Stat."), sections 92F-15,92F-27, and DPS policies and procedures.  *Id.*

Marks' Complaint is DISMISSED for failure to state a cognizable claim for relief against DPS, Kimoto, and Ioane.  *See* 28 U.S.C. §§ 1915(e)(2) & 1915A(b).  Marks is granted leave to amend to correct the Complaint's deficiencies on or before June 15, 2015.

In the alternative, Marks may voluntarily dismiss his federal claims against Ioane and Kimoto with prejudice, the court will decline supplemental jurisdiction over his state law claims, and remand this action to the state circuit court.  *See* 28 U.S.C. § 1367(c)(3).  If Marks chooses this alternative, he must notify the court in writing of his decision on or before June 15, 2015.

## I.  <u>BACKGROUND</u>

### A.  **Procedural History**

On or about November 8, 2004, the state circuit court sentenced Marks to a term of life without parole after he pled no contest to second-degree murder.[1]  *See* Hawaii SAVIN, available at: https://www.vinelink.com/vinelink (last visited Apr. 7, 2015,

---

[1] The court takes judicial notice of this public information.  *See Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007) (court may take judicial notice of proceedings in other courts if they have a direct relation to the matters at issue); *Anderson v. Holder*, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012); Fed. R. Evid. 201(b).

indicating "LIFE WITHOUT PAROLE").  Marks' sentence has not been overturned, reversed, or modified to date.  *Id.*  Marks is currently challenging his sentence in the state circuit court.  *See Marks v. Hawaii*, S.P.P. No. 14-1-0008 (Haw. 1st Cir. 2014) (pending on appeal in CAAP 14-1-0001319).

While Marks was incarcerated at SCC, on or about May 9, 2012, SCC Assistant Warden ("AW") Ben Griego charged Marks with two SCC rule violations: (1) "C-9 Failure to Follow," and (2) "C-12 Hindering," for Marks' submitting three grievances directly to the SCC Food Service Manager ("FSM") Paul Parker, rather than to AW Griego.  Compl., Doc. No. 6-1, PageID #159-62, #201.  Marks alleges he was trying to informally resolve FSM Parker's alleged failure to provide him with a special kosher menu during the 2012 Passover week.  *Id.*  Marks was immediately moved to pre-hearing detention.  On May 14, 2012, he received written notice of the charges and was notified that the disciplinary hearing would take place the next day.  *See id.*, PageID #201.

On May 15, 2012, the hearing was held.  *Id.*, PageID #201.  SCC Disciplinary Hearing Officer ("DHO") Holley found Marks guilty of both rule violations, based on the content of Marks' grievances to FSM Parker and AW Griego's statements.  *Id.*, PageID #202.  DHO Holley sanctioned Marks to thirty days disciplinary segregation, calculated from May 9, 2012, the date Marks entered pre-hearing detention.  *Id.*  Marks signed the

Hearing Information form explaining the basis for DHO Holley's finding of guilt, and indicated that he wanted to appeal. Marks claims SCC officials never responded to his request to appeal. *See* Doc. No. 6-1, PageID #169 and #202. Marks was released from segregation on or about June 8, 2012.

On June 20, 2012, Ioane added an "Incident Detail Report" to Marks' DPS central file, incorporating Marks' guilty finding in the SCC disciplinary proceedings. *See id.*, PageID #272. In doing so, Ioane converted the SCC hindering charge to an allegedly equivalent DPS hindering charge as required by DPS policy. *See* DPS Policies and Procedures Manual ("PPM"), "High Misconduct Violations," COR.13.03.4.3a.7(12);[2] available at: http://dps.hawaii.gov/wp-content/uploads/2014/12/COR.13.03.pdf. The SCC and DPS hindering charges both permit thirty-days segregation as a sanction. Marks asserts the charges are not equivalent, arguing FSM Parker is not a public servant and that he did not "physically" obstruct or hinder Parker in his duties.

Marks next claims that Ioane increased his DPS classification level from 19 points to 25 points on or about

_____

[2] COR.13.03.4.3a.7(12) prohibits:

The use of physical interference or obstacle resulting in the obstruction, hindrance, or impairment of the performance of a correctional function by a public servant, which requires facts related to the conduct and does not require that the conduct was an intentional act.

April 11, 2013.  *See* Doc. No. 1-1, PageID #44-45 (showing a 5-
point increase for frequency of misconduct reports, and a 1-point
credit loss for attending programs/work).  The April 11, 2013,
annual DPS review report, however, shows that Chris Frappeia was
the reporting officer when Marks' score was raised, not Ioane.
Ioane is the reporting officer on Marks' *April 14, 2012*,
reclassification document, when Marks' classification points were
still 19.  *See id.*

On April 30, 2014, Marks wrote Ioane and Kimoto,
alleging he had recently discovered these changes, after Honolulu
Deputy Prosecutor Sonja P. McCullen provided him a copy of his
DPS file.  *See* Doc. No. 6-1, PageID #186.  Marks does not allege
*when* he received this information from McCullen.  Marks also
complained of several alleged constitutional violations that he
claims occurred during the 2012 SCC disciplinary proceedings.
Although the May 2012 SCC discipline report had not been
overturned by SCC officials, Marks requested that Ioane and
Kimoto expunge the DPS Incident Report from his DPS file and
adjust his classification score accordingly.  *See id.*, PageID
#186-189.

Marks filed this action in the state circuit court on
or about August 25, 2014, while he was incarcerated at SCC.
Marks was transferred to HCF in early September 2014.  *See*

Transmittal of Record, Doc. Nos. 13-3 (Sept. 23, 2014 Notice of
Change of Address); 13-8 (showing HCF return address).

On December 22, 2014, Defendants properly removed the
action to this court pursuant to 28 U.S. §§ 1331 & 1441(a). *See*
Doc. Nos. 1-1, 15 (Order).

**B. Marks' Claims**

Marks alleges that Ioane and Kimoto violated his
federal and state rights to due process and equal protection when
(1) Ioane converted the 2012 SCC hindering charge to the
allegedly more serious DPS hindering charge, and entered it in
his DPS central file on June 20, 2012; (2) Ioane allegedly raised
his classification score on April 11, 2013; and (3) Ioane and
Kimoto refused to expunge the DPS Incident Report.  Marks
primarily argues that DPS policy requires *three* DHOs at
disciplinary proceedings held in Hawaii, while SCC regulations
require only one.  He asserts that, as DPS' Mainland & FDC
Contract Monitor and Administrator, Ioane and Kimoto knew or
should have known about this allegedly discriminatory difference
in treatment between inmates incarcerated in Hawaii and inmates
incarcerated in SCC, but they failed to correct this disparity.
He claims they are therefore liable for violating his right to
due process and equal protection.  *See id.*, PageID #18.

Marks seeks costs, actual, compensatory, and punitive
damages against DPS, Ioane, and Kimoto.  He demands expungement

of the DPS Incident Detail Report (with notice to all agencies
that refer to this file), and recalculation of his classification
points.  Finally, Marks seeks a declaration that DPS, Ioane,
Kimoto, *and unnamed SCC officials*[3] violated his constitutional
rights.  *See* Prayer for Relief, Doc. No. 1-1, PageID #34-37.

## II.  <u>LEGAL STANDARD</u>

The court must screen all prisoner civil actions
seeking redress from a governmental entity, officer, or employee.
28 U.S.C. § 1915A(a).  Complaints or claims that are frivolous,
malicious, fail to state a claim, or seek relief from an immune
defendant must be dismissed.  28 U.S.C. § 1915(e)(2); 28 U.S.C.
§ 1915A(b); 42 U.S.C. § 1997e (c)(1).  In analyzing a pleading,
the court sets conclusory factual allegations aside, accepts all
non-conclusory factual allegations as true, and determines
whether those non-conclusory factual allegations accepted as true
state a claim for relief that is plausible on its face.  *Ashcroft
v. Iqbal*, 556 U.S. 662, 677-80 (2009).  "The plausibility
standard is not akin to a probability requirement, but it asks

---

[3] Marks does not name AW Griego, DHO Holley, FSM Parker, or
other SCC officials as Defendants, despite his clear statement of
facts alleging their actions violated his rights and underlie any
later violation by Ioane and Kimoto.  Rather, he carefully
refrains from making direct claims against any individual in
Arizona.  The court will not speculate on why Marks decided to
proceed in the Hawaii state court, against Hawaii state officials
only, alleging primarily state law claims.  The court will not,
however, address Marks' vaguely suggested claims against unnamed
SCC officials, except to the extent he alleges derivative
liability against Ioane and Kimoto for those claims.

for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (internal quotation marks and citation omitted). In determining plausibility, the Court is required "to draw on its judicial experience and common sense." *Id.* at 679.

A complaint that lacks a cognizable legal theory or alleges insufficient facts under a cognizable legal theory fails to state a claim. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *Twombly*, 550 U.S. at 555 (stating the court is "not bound to accept as true a legal conclusion couched as a factual allegation.").

Leave to amend should be granted if it appears the plaintiff can correct the defects of his or her complaint. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000); *but cf.*, *Sylvia*

*Landfield Trust v. City of L.A.*, 729 F.3d 1189, 1196 (9th Cir. 2013) (holding that the district court has discretion to dismiss a pro se complaint without leave to amend when "it is clear that the complaint could not be saved by any amendment").

## III.  <u>DISCUSSION</u>

"To sustain an action under section 1983, a plaintiff must show '(1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a federal constitutional or statutory right.'" *Hydrick v. Hunter*, 500 F.3d 978, 987 (9th Cir. 2007) (citation omitted), *vacated and remanded on other grounds*, 556 U.S. 1256 (2009); *see also West v. Atkins*, 487 U.S. 42, 48 (1988); 42 U.S.C. § 1983.

## A.   **DPS Is Dismissed**

Marks names DPS as a defendant.  Because DPS is an agency of the State of Hawaii, it is not subject to suit as a "person" within the meaning of § 1983, and is DISMISSED as to Marks' federal claims.  *See Pennhurst*, 465 U.S. at 106; *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 53-54 (1996); *see also Gilbreath v. Cutter Biological, Inc.*, 931 F.2d 1320, 1327 (9th Cir. 1991).

Marks names Ioane and Kimoto in their official capacities for prospective injunctive relief, however, preserving his claims for prospective injunctive relief.  *See Hartmann v.*

*Cal. Dept. of Corr. and Rehab.*, 707 F.3d 1114, 1127 (9th Cir.
2013) ("An official-capacity suit 'represent[s] only another way
of pleading an action against an entity of which an officer is an
agent.'") (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985))
(further quotations and citations omitted); *Flint v. Dennison*,
488 F.3d 816, 824-25 (9th Cir. 2007).[4]

## B.   Due Process

Marks claims Ioane and Kimoto violated his right to due
process when they (1) altered his DPS institutional file; and (2)
changed his classification score.  He further suggests they are
liable for SCC's failure to provide him three hearing officers or
to allow him to call a witness at the disciplinary hearing.
Marks argues that, if his state post-conviction petition in *Marks
v. Hawaii*, S.P.P. No. 14-1-0008 is successful, and he is
resentenced to life *with* parole, his chances of being granted
parole are diminished by the DPS Incident Detail Report and his
heightened classification level.  *See* Compl., Doc. No. 1-1,
PageID #9.

To state a due process violation, a plaintiff must
first establish the liberty interest for which protection is

---

[4] Even if Defendants waived Eleventh Amendment immunity by
removing this action to this court, *see Lapides v. Bd. of Regents
of Univ. Sys. of Ga.*, 535 U.S. 613, 620 (2002), the Eleventh
Amendment does not bar claims for prospective injunctive relief
brought against state officials in their official capacity.  *See
Graham*, 473 U.S. at 167 n.14.

sought.  Liberty interests may arise from the Due Process Clause

of the Fourteenth Amendment or from state law.  *Hewitt v. Helms*,

459 U.S. 460, 466-68 (1983), *abrogated in part on other grounds*

*by Sandin v. Conner*, 515 U.S. 472, 481-84 (1995); *Wilkinson v.*

*Austin*, 545 U.S. 209, 221 (2005); *Chappell v. Mandeville*, 706

F.3d 1052, 1062 (9th Cir. 2013).  If no protected liberty

interest is at stake, no process is required.  *See, e.g.*,

*Wilkinson*, 545 U.S. at 221; *Ky. Dep't of Corr. v. Thompson*, 490

U.S. 454, 459-60 (1989); *Meachum v. Fano*, 427 U.S. 215, 223-24

(1976); *McQuillion v. Duncan*, 306 F.3d 895, 900 (9th Cir. 2002).

### 1.  *No Direct Liberty Interests*

A prisoner has a liberty interest directly under the

Fourteenth Amendment if the challenged prison practice or

sanction is not "within the normal limits or range of custody

which the conviction has authorized the State to impose."

*Meachum*, 427 U.S. at 225; *see also Hewitt*, 459 U.S. at 466-70.

First, prisoners have no constitutional right to a

particular security classification.  *See Meachum*, 427 U.S. at

224-25; *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (same as

applied to federal prisoners); *Myron v. Terhune*, 476 F.3d 716,

718 (9th Cir. 2007) (holding that a raised classification score

does not implicate a state-created liberty interest); *Hernandez*

*v. Johnston*, 833 F.2d 1316, 1319 (9th Cir. 1987) (declining to

find such interest). Marks has no liberty interest based on the change in his classification score from 19 to 25.

Second, Hawaii's inmates have no liberty interest in parole. *See Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 7 (1979); *Jago v. Van Curren*, 454 U.S. 14, 17-21 (1981) (holding there is no constitutionally protected interest in a parole date even after a parole date is set); *Mujahid v. Apao*, 795 F. Supp. 1020, 1024 (D. Haw. 1992) (finding no state-created liberty interest in parole); *Rideout v. Haw. Paroling Auth.*, 2014 WL 1571286, at *3 (D. Haw. April 17, 2014) (collecting District of Hawaii cases); *Turner v. Haw. Paroling Auth.*, 93 Haw. 298, 302, 1 P.3d 768, 772 (2000). As a state inmate subject to Hawaii's laws, Marks has no liberty interest in parole (particularly in light of his life without parole sentence).

Third, to the extent Marks asserts that Ioane's and Kimoto's actions *may* result in his diminished *future* possibility of parole if his sentence is reduced to life with parole, his claim fails. "The decision to release a prisoner rests on a myriad of considerations. And, the prisoner is afforded procedural protection at his parole hearing in order to explain the circumstances behind his misconduct record." *Sandin*, 515 U.S. at 487. The mere possibility that a disciplinary action taken against a prisoner could later influence a prisoner's

12

chance at early release is "too attenuated" to implicate the Due

Process Clause. *Id.* Marks has no liberty interest in the

possibility that he may some day be eligible for parole.

Fourth, if Marks has no liberty interest in parole, it

follows that he retains no liberty interest in the procedures

relating to the grant of parole, including the maintenance of

accurate prison files. *See Johnson v. Rodriguez*, 110 F.3d 299,

309 n.13 (5th Cir. 1997); *see also O'Kelley v. Snow*, 53 F.3d 319,

321 (11th Cir. 1995) ("[U]nless there is a liberty interest in

parole, the procedures followed in making a parole determination

are not required to comport with standards of fundamental

fairness.").[5]

A prisoner has a fundamental liberty interest in the

accuracy of his prison file only if the allegedly erroneous

information will "*inevitably* affect[] the duration of his

sentence." *Ricchio v. Eichenberger*, 2011 WL 43536, at *3 (E.D.

Cal. Jan. 6, 2011) (emphasis added); *Ramirez v. Galaza*, 334 F.3d

850, 859-60 (9th Cir. 2003) (holding inmate has a right to

expungement only if expungement is likely to accelerate the

prisoner's eligibility for parole); *Rio v. Schwarzenegger*, 2009

WL 1657438, at *6 (C.D. Cal. June 10, 2009) ("[A]n inmate seeking

to expunge erroneous information from his file under the Due

---

[5] The Ninth Circuit Court of Appeals has not recognized a free-standing constitutional right to an accurate prison file. *See Hernandez*, 833 F.2d at 1318.

Process Clause 'must show that the false information will inevitably lengthen the duration of the inmate's incarceration.'"). As noted, Marks' life without parole sentence has not been overturned, reversed, or otherwise altered. Thus, Ioane and Kimoto had no duty to expunge the DPS Incident Detail Report from his DPS institutional file, because, accurate or not, it cannot affect the "normal limits or range of [Marks'] custody." *Meachum*, 427 U.S. at 225. Marks has no liberty interest in an accurate DPS file, and, as of the date of filing the Complaint, it appears his file is accurate.

Fifth, to the extent Marks challenges SCC officials' housing him in pre-hearing detention on allegedly "false" charges, and suggests that Ioane and Kimoto are liable for this, he has no constitutional protection from being falsely or wrongly accused of conduct that may result in the deprivation of a protected liberty interest. *See Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989); *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986); *Chavira v. Rankin*, 2012 WL 5914913, *1 (N.D. Cal., Nov. 26, 2012). Being innocent of disciplinary charges that resulted in pre-hearing administrative segregation does not violate due process, because the "Constitution demands due process, not error-free decision-making." *Chavira*, 2012 WL 5914913, *1 (citing *Ricker v. Leapley*, 25 F.3d 1406, 1410 (8th Cir. 1994); *McCrae v. Hankins*, 720 F.2d 863, 868 (5th Cir.

1983)).  Even if Marks had such a liberty interest, he fails to explain how Ioane and Kimoto are liable for his pre-hearing detention at SCC, when the allegedly false charges have not been overturned.

### 2.  *No State-created Liberty Interest*

Marks also fails to allege facts showing he had a state-created liberty interest to due process protections before Ioane and Kimoto changed his DPS file and classification score. A state-created right to due process may arise when a prisoner's placement in segregation imposes an "'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'"  *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003) (quoting *Sandin*, 515 U.S. at 484); *Wilkinson*, 545 U.S. at 221; *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003).  A finding of "atypical and significant" hardship depends on three factors:

> 1) whether the challenged condition 'mirrored those conditions imposed upon inmates in administrative segregation and protective custody,' and thus comported with the prison's discretionary authority; 2) the duration of the condition, and the degree of restraint imposed; and 3) whether the state's action will invariably affect the duration of the prisoner's sentence.

*Ramirez*, 334 F.3d at 861 (citing *Sandin*, 515 U.S. at 486–87); *see also Chappell*, 706 F.3d at 1064; *Myron*, 476 F.3d at 718.

First, Marks alleges no facts showing that Ioane's and Kimoto's changes to his DPS central file and classification score affected his life without parole sentence in any unexpected manner, or imposed atypical and significant changes to the conditions of his confinement as compared to the normal incidents of prison life. Marks had already been released from SCC segregation when these changes were made. He does not claim that he was returned to segregation or otherwise disciplined due to the changes to his DPS file and classification points. Moreover, Marks' custody level has not changed since the DPS Incident Detail Report was added to his file and his classification points were raised. *See* Compl., Doc. No. 6-1, PageID #289-90 (July 14, 2014 Kimoto letter, noting Marks remains close custody due to his life without parole sentence). Marks had no state-created liberty interest in preventing the changes to his file and classification score.

Second, Marks fails to allege facts showing he was subject to atypical or significant changes to the conditions of his confinement even while he was in SCC disciplinary segregation in 2012 for thirty-days, or how such deprivations can be charged to Ioane or Kimoto, who changed his file *after* he was released. *See Sandin*, 515 U.S. at 485–86 (finding Hawaii prisoner's thirty-day placement in disciplinary segregation did not result in atypical, significant deprivation for which state might create

liberty interest); *Resnick*, 213 F.3d at 445 (holding inmate had no cognizable due process claim because he had no liberty interest in being free from disciplinary segregation); *Myron*, 476 F.3d at 718.  Marks does not compare the conditions in SCC administrative segregation with those in disciplinary segregation, or show how they were materially different.  Nor does he indicate how the thirty-day segregation will invariably affect his life without parole sentence.  Marks fails to show that he had a state-created liberty interest, based on the conditions of his confinement in SCC disciplinary segregation, that entitled him to procedural protection.

Finally, even if Marks could allege he had a liberty interest entitling him to procedural due process before the SCC disciplinary hearing, he fails to state a due process claim. Prisoners facing discipline are entitled to three minimal due process protections: (1) written notice of the charges at least twenty-four hours prior to the hearing; (2) an opportunity to call witnesses and supply documentary evidence, if this will not jeopardize prison security; and (3) a written statement of the reasoning behind the officer's findings and the evidence relied on.  *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974).

Marks received written notice of the charges twenty-four hours before the hearing, and a written statement detailing the evidence DHO Holley relied on to find him guilty after the

hearing.  *See* Doc. No. 6-1, PageID #201.  Marks alleges no facts regarding the alleged denial of his witness, or explain what evidence he hoped to elicit from this witness to refute the charges.  Rather, Marks admitted he wrote FSM Parker directly three times, although he claims he was trying to informally resolve the issue.  Most importantly, it is immaterial that he had only one disciplinary hearing officer, because there is no constitutional right to *three* hearing officers during disciplinary proceedings, whether those proceedings are held in Hawaii or in Arizona.  *See Wolff*, 418 U.S. at 563–566.  Marks' conclusory allegations regarding the denial of procedural due process are insufficient to state a claim against Ioane, Kimoto, or unnamed SCC officials.

Marks fails to plausibly allege that the changes to his DPS file and classification score, or his confinement in SCC disciplinary segregation, created atypical and significant deprivations to his confinement in relation to the normal incidents of prison life, or will invariably affect the duration of his sentence.  *See Ramirez*, 334 F.3d at 861 (further citations omitted).  Marks' Due Process Claims are DISMISSED pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a), with leave to amend.

## C.    Equal Protection

Marks alleges Ioane and Kimoto violated his right to equal protection because they knew that inmates housed in

18

Hawaii's prisons are afforded three DHOs during disciplinary hearings, while Hawaii inmates housed in SCC may have only one DHO. Compl., Doc. No. 1-1, PageID #8. "The Equal Protection Clause requires the State to treat all similarly situated people equally." *Hartmann v. Cal. Dep't of Corr.*, 707 F.3d 1114, 1123 (9th Cir. 2013) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). "This does not mean, however, that all prisoners must receive identical treatment and resources." *Hartmann*, 707 F.3d at 1123 (citations omitted).

To state an equal protection claim, a plaintiff can allege that "defendants acted with an intent or purpose to discriminate against [him or her] based upon membership in a protected class." *Barren v. Harrington*, 152 F.3d 1193, 1194-95 (9th Cir. 1998) (citing *Washington v. Davis*, 426 U.S. 229, 239-40 (1976)); *Hartmann*, 707 F.3d at 1123 (further citations omitted). If the challenged acts do not involve a suspect classification, a plaintiff can establish an equal protection "class of one" claim by alleging that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936, 944 (9th Cir. 2004).

First, as explained above, Marks has no right to three hearing officers, thus, providing him only one is not evidence of discrimination.

Second, although Marks is Jewish, he does not allege that Ioane or Kimoto changed his DPS file, raised his classification score, and refused to expunge his charges because of his faith, or because he was challenging SCC's alleged denial of Kosher-for-Passover meals to him. Prisoners are not considered a suspect class, *see Rodriquez v. Cook*, 169 F.3d 1176, 1179 (9th Cir. 1999), and Marks does not otherwise allege membership in a suspect class.

Third, Marks does not allege that he was treated differently than other Hawaii inmates who are incarcerated at SCC, the class of prisoners to whom he is similarly situated. Marks points to no instance when Ioane and Kimoto changed another Hawaii SCC inmate's institutional file or classification score under similar circumstances for a disciplinary infraction incurred at SCC, but refused to do so for him. Marks also fails to allege facts showing that he, or other SCC inmates from Hawaii, are "similarly situated" to inmates who are incarcerated in Hawaii's public prisons and are entitled to identical procedural rights during disciplinary hearings. Prisoners are not entitled to identical treatment regardless of their crimes, custody status, prison infractions, prison location, or other

mutable factors. *See Hartmann*, 707 F.3d at 1123. Prisons can provide different food, programs, cells, uniforms, and recreation to inmates, as long as they comply with the Constitution's mandates. Marks, therefore, cannot claim that Ioane and Kimoto intentionally violated his right to equal protection because procedures at SCC differ from those at Hawaii's public prisons. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986) ("Although for the purposes of this motion to dismiss [the court] must take all the factual allegations in the complaint as true, [the court is] not bound to accept as true a legal conclusion couched as a factual allegation." Marks fails to state an equal protection violation and this claim is DISMISSED with leave to amend.

## D. Supervisory Liability

Finally, Marks alleges that DPS Mainland Administrator Kimoto and Contract Monitor Ioane are liable for SCC officials' alleged wrongdoings in May-June 2012, based on their supervisory positions.[6] Marks claims Parker, Griego, and Holley retaliated

---

[6] To be clear, Marks names no SCC official as a defendant, although he identifies DHO Holley, FSM Parker, and AW Griego as involved in the SCC proceedings. He alleges no direct cause of action against, and seeks no relief from, any SCC official. Instead, Marks carefully describes the alleged 2012 SCC violations as committed by "Defendants' [DPS, Ioane, Kimoto] 'contracting agency.'" *See* Compl., Doc. No. 1-1, PageID #12-15. Marks also commenced suit in the Hawaii state circuit court, rather than in the U.S. District Court for the District of Arizona, although he was incarcerated in Arizona when he filed suit, the SCC disciplinary hearing took place in Arizona, and the SCC officials who allegedly committed these violations are

(continued...)

against him for having filed an earlier suit against them,[7] and violated his rights under the First Amendment[8] and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA").[9] Marks asserts that Ioane and Kimoto "turned a blind eye" to SCC's actions. Compl., Doc. No. 1-1, PageID #13, ¶ 27.

"Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676. *Iqbal*, however, does not foreclose a plaintiff from stating a claim for supervisory liability based on the "supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her subordinates." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir.

---

[6](...continued)
located in Arizona. *See* 28 U.S.C. § 1391.

[7] Marks claims SCC officials falsely charged him in retaliation for his filing suit against them in *Marks v. Corr. Corp. of Am.*, *et al.*, 2:11-cv-00072 PGR-ECF (D. Ariz. 2011) (alleging he was denied a kosher diet). *See* Doc. No. 1-1, PageID #12-15; *see also Marks*, 2:11-cv-00072 PGR-ECF, Doc. Nos. 1-2, 48.

[8] The First Amendment provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I. This "requires government respect for, and noninterference with, the religious beliefs and practices of our Nation's people." *Cutter v. Wilkinson,* 544 U.S. 709, 719 (2005).

[9] Section 3 of RLUIPA, 114 Stat. 804, 42 U.S.C. § 2000cc-1(a)(1)-(2), provides in part: "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution," unless the burden furthers "a compelling governmental interest," and does so by "the least restrictive means."

2011).  A defendant may be held liable as a supervisor under

§ 1983:

> 'if there exists either (1) his or her
> personal involvement in the constitutional
> deprivation, or (2) a sufficient causal
> connection between the supervisor's wrongful
> conduct and the constitutional violation.'
>
> * * *
>
> 'The requisite causal connection can be
> established . . . by setting in motion a
> series of acts by others,' or by 'knowingly
> refus[ing] to terminate a series of acts by
> others, which [the supervisor] knew or
> reasonably should have known would cause
> others to inflict a constitutional injury.'
> 'A supervisor can be liable in his individual
> capacity for his own culpable action or
> inaction in the training, supervision, or
> control of his subordinates; for his
> acquiescence in the constitutional
> deprivation; or for conduct that showed a
> reckless or callous indifference to the
> rights of others.'

*Id.* at 1207-08 (internal citations omitted, alterations in

original).  To premise a supervisor's alleged liability on a

policy promulgated by the supervisor, a plaintiff must identify a

specific policy and establish a "direct causal link" between that

policy and the alleged constitutional deprivation.  *See, e.g.*,

*City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Oviatt v.*

*Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992).

First, Marks fails to allege any facts showing that

Ioane and Kimoto personally participated in or were even aware of

SCC officials' alleged violations of his constitutional rights

before they changed his DPS file.  Marks does not claim that Ioane and Kimoto knew about (1) his grievances regarding FSM Parker's alleged denial of his special Passover kosher diet; (2) AW Griego's allegedly retaliatory charge; (3) his confinement in pre-hearing detention; (4) DHO Holley's guilty finding; and (5) his thirty-day segregation, at any time before June 20, 2012, when Ioane updated Marks' DPS file.  That is, Marks does not say Ioane and Kimoto knew that SCC officials were allegedly retaliating against Marks and violating his religious rights under the First Amendment and RLUIPA, yet failed to act to prevent these alleged violations.

Second, Marks fails to allege any facts showing SCC officials' alleged retaliation and free exercise of religion violations were the result of a policy, practice, or procedure implemented or promoted by DPS, Ioane, and Kimoto that was the moving force of the alleged constitutional violations at SCC. DPS' PPM does not require three hearing officers at SCC, and does not promote retaliation and the denial of religious rights to prisoners.  Marks' supervisory liability claims against Ioane and Kimoto are DISMISSED with leave to amend.

**E.   State Law Claims**

Marks is notified that, unless he can amend his Complaint to state at least one cognizable federal claim, this court will decline supplemental jurisdiction over his state law

claims and remand this action to the state circuit court.  *See* 28
U.S.C. § 1367(c)(3) (discussing when a federal court may accept
or decline supplemental jurisdiction).

## IV.  **LEAVE TO AMEND**

Marks' Complaint is DISMISSED IN PART as detailed
above, pursuant to 28 U.S.C. § 1915(e)(2); 28 U.S.C. § 1915A(b);
42 U.S.C. § 1997e (c)(1).  He may file an amended complaint on or
before June 15, 2015**,** that cures the deficiencies noted in this
Order, if possible.

An amended complaint generally supersedes the original
complaint.  *See Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967).
Local Rule LR10.3 further requires that an amended complaint be
complete in itself without reference to any prior pleading.  The
court will not generally refer to the original pleading to make
an amended complaint complete.  Defendants not named in the
caption and claims dismissed without prejudice that are not
realleged in an amended complaint may be deemed voluntarily
dismissed.  *See Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th
Cir. 2012) ("[C]laims dismissed with prejudice [need not] be
repled in a[n] amended complaint to preserve them for
appeal. . . . [but] claims [that are] voluntarily dismissed
[are] . . . waived if not repled.").  In an amended complaint,
each claim and the involvement of each Defendant must be
sufficiently alleged.  Plaintiff is further notified that he must

25

comply with the Federal Rules of Civil Procedure and the Local Rules for the District of Hawaii if he amends his pleading.

In the alternative, Plaintiff may elect to dismiss his federal claims with prejudice and stand on his remaining state law claims against DPS, Ioane, and Kimoto. If Plaintiff chooses this alternative, he must NOTIFY the court in writing on or before June 15, 2015 of his decision, and the court will remand his remaining state claims to the state circuit court. *See* 28 U.S.C. § 1367(c)(3). If Plaintiff fails to timely comply with this Order, the court may, without further notice, dismiss the federal claims alleged herein with prejudice for his failure to state a claim, and remand his state law claims to the state circuit court *sua sponte*. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the court).

### V.  CONCLUSION

(1)  The Complaint is DISMISSED IN PART for failure to state a claim for the reasons detailed above. *See* 28 U.S.C. § 1915(e)(2)(b) & 1915A(b)(1). Specifically, Marks' federal claims against DPS are dismissed. Marks' Due Process, Equal Protection, and Supervisor Liability claims against Defendants Ioane and Kimoto are DISMISSED with leave granted to amend.

(2)  Marks is GRANTED leave to file an amended complaint curing the deficiencies noted above, if possible, on or before June 15, 2015.  Failure to timely amend the Complaint and cure its pleading deficiencies will result in dismissal of Marks' federal causes of action against Ioane and Kimoto with prejudice for failure to state a claim.

(3)  In the alternative, Marks may NOTIFY the court in writing on or before June 15, 2015, that he elects to voluntarily dismiss his federal claims with prejudice.  If Marks chooses this option, this action will be remanded to the First Circuit Court, State of Hawaii.

(4)  The Clerk is directed to mail Marks court forms for a prisoner civil rights complaint so that he can comply with the directions in this Order.  If he amends his Complaint, Marks need not resubmit his exhibits.

IT IS SO ORDERED.

DATED: April 28, 2015, Honolulu, Hawaii.



_/s/ Helen Gillmor_____

Helen Gillmor
United States District Judge

*Marks v. Hawaii Dep't of Public Safety,* 1:14-cv-00571 HG/BMK, scrng 2015; H:\Orders\Denise\14cv571 Marks v. HI.Order Dismissing Complaint with leave to amend.wpd

27